PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA NAGY SMITH, *et al.*, | ) | |
| | ) | CASE NO. 1:10CV00754 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CUYAHOGA COUNTY, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** (Resolving ECF Nos. 7, 10, and |
| | ) | 21.) |

## I. Introduction

Before the Court are Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendants Steven Neuhaus ("Neuhaus"), Ph.D., Nancy J. Huntsman ("Huntsman"), Ph.D., and Ellen G. Miller ("Miller"), Director of Family Conciliation Services ("FCS").[1]  ECF Nos. 7, 10, and 21.  At issue is whether Plaintiffs' action fails to state a claim upon which relief can be granted.

For the reasons that follow, Defendants Huntsman and Miller's motions to dismiss are granted and, as a result, all federal claims are dismissed.  The Court declines to exercise supplemental jurisdiction over the remaining State law claims.  Therefore, Defendant Neuhaus' motion to dismiss is remanded to State court unresolved.

---

[1] In addition to the above-named defendants, Plaintiffs originally sued Cuyahoga County, Ohio, Cuyahoga County Common Pleas Court, Domestic Relations Division and FCS. ECF No. 1-2 at 1.  However, Plaintiffs voluntarily dismissed those defendants pursuant to FRCP 41(a)(1).  *See* ECF No. 18.

(1:10CV00754)

## II. Procedural History

On or about February 23, 2010, Smith, individually and on behalf of her minor children (collectively referred to as "Smith"), filed the instant action against Neuhaus, Huntsman, and Miller in the Court of Common Pleas for Cuyahoga County, Ohio. ECF No. 1 at 1. Smith alleged violations of Title 42, United States Code § 1983, and State law claims of intentional and negligent infliction of emotional distress, defamation, negligence, and fraud.[2] ECF No. 1-2 at 15-25.

On April 12, 2010, this action was timely removed from the Court of Common Pleas in Cuyahoga County, Ohio to the United States District Court for the Northern District of Ohio, Eastern Division pursuant to 28 U.S.C. § 1441. ECF No. 1 at 1-2.

## III. Factual History[3]

On July 8, 2008, Smith and her husband, Paul Smith ("Paul"), were legally separated by the Cuyahoga County Domestic Relations Court. ECF No. 1-2 at 4-5. Smith was named the sole custodian and residential parent of their minor children. Paul retained visitation rights. ECF No. 1-2 at 5.

On January 29, 2009, Smith filed a motion to modify Paul's visitation rights with the Court of Common Pleas for Cuyahoga County, Ohio. ECF No. 1-2 at 5. On February 12, 2009, in response to Smith's motion, Paul filed a motion to appoint a *Guardian ad Litem* for the minor

---

[2] Appendix A provides a summary of the allegations.

[3] Smith, an attorney acting *pro se* and as the legal representative for her children, uses the terms "Plaintiff" and "Plaintiffs" when referring to herself alone or herself in conjunction with her children. The Court, for simplicity, will refer to the complainants as Smith.

2

(1:10CV00754)

children (ECF No. 1-2 at 5) and, on February 17, 2009, Paul filed a motion to modify Smith's parental rights and responsibilities. ECF No. 1-2 at 5.

On February 20, 2009, Judge Leslie Ann Celebrezze of the Court of Common Pleas for Cuyahoga County, Ohio ordered Smith and Paul to undergo a custody evaluation to be administered through FCS. ECF Nos. 1-2 at 4-5; 7 at 3. Smith contends that Judge Celebrezze personally selected Huntsman, a staff psychologist at FCS, to conduct the court-ordered custody evaluation. ECF No. 1-2 at 5.

On March 4, 2009, pursuant to Judge Celebrezze's order, Huntsman conducted an initial interview with Smith. ECF No. 1-2 at 6. During the interview, Smith contends that Huntsman verbally attacked Smith's character and parenting methods. ECF No. 1-2 at 6-9. Smith further contends that Huntsman heavily criticized the family's religious beliefs. ECF No. 1-2 at 9.

On or about March 18, 2009, Smith took the minor children to Huntsman's office for an additional interview. ECF No. 1-2 at 9. Smith contends that, during this interview, Huntsman's dialogue demeaned the children. ECF No. 1-2 at 9. Subsequently, Smith contacted Miller, the Director of FCS and Huntsman's supervisor, to complain about Huntsman's treatment of Smith and the minor children. ECF No. 1-2 at 11. Smith demanded that Huntsman be removed from the case. ECF No. 1-2 at 11.

On or about March 20, 2009, because Miller had not removed Huntsman from the case, Smith contacted Neuhaus, an independent psychologist, to replace Huntsman or to conduct an independent custody evaluation. ECF No. 1-2 at 11.

On March 24, 2009, Smith filed a motion in State court to appoint Neuhaus as an

3

(1:10CV00754)

Independent Expert to conduct the custody evaluation instead of Huntsman.  ECF No. 1-2 at 12. On March 26, 2009, Judge Celebrezze, despite Smith's motion, ordered Huntsman to continue her evaluation and ordered Neuhaus to conduct an independent evaluation to be paid for by Smith.  ECF No. 1-2 at 12.  On June 19, 2009, the Judge reaffirmed her order that Huntsman continue the custody evaluation and ordered the parties to cooperate with Neuhaus, in the event he was retained by Smith, thereby, removing the requirement that Smith pay Neuhaus.  ECF No. 1-2 at 12.

Smith began seeing Neuhaus at his office.  ECF No. 1-2 at 12.  Later, during discovery, Smith learned that Huntsman and Neuhaus were "close personal friends," and had contact during the pendency of the custody evaluation, something neither Huntsman or Neuhaus disclosed. ECF No. 1-2 at 14.

## IV.  Legal Standard

In deciding a motion to dismiss by Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 1950.  The factual

4

(1:10CV00754)

allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities).

In other words, claims set forth in a complaint must be plausible, rather than conceivable. *Id*. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal*, 129 U.S. at 1950 (citing Fed. R. Civ. P. 8(a)(2)). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Because the Court finds the motions to dismiss the federal law allegations well taken and declines to retain jurisdiction over the State law claims, the discussion below is focused on the federal law allegations.

Typically, to survive a motion to dismiss, a complaint alleging 42. U.S.C. § 1983 must plausibly set forth two elements: (1) that the defendant acted under color of state-law, and (2) that the defendant's conduct deprived the plaintiff of a right secured by federal law. *See Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)). Even a well-pleaded complaint fails, however, when confronted with a viable defense of absolute quasi-judicial immunity.

The § 1983 claims against Miller and Huntsman are dismissed, as discussed below.

### V. Discussion

**A.  The 42 U.S.C. § 1983 Claim Against Huntsman is Barred by Absolute Quasi-Judicial Immunity.**  ECF No. 1-2 at 15-16.

In Count One, Smith argues that, (1) while acting under the color of law, Huntsman (2)

5

(1:10CV00754)

deprived Smith of a right secured by federal law. ECF No. 1-2 at 15-16. Smith contends that Huntsman willfully, wantonly, intentionally, and maliciously violated Smith's First Amendment rights by "criticizing" and "demeaning" her religious faith. ECF No. 1-2 at 15-16.

Huntsman contends that Smith's claims against her are barred by absolute quasi-judicial immunity. ECF No. 10 at 7-10. If applicable, absolute quasi-judicial immunity precludes liability for violating 42 U.S.C. § 1983. *See Bush v. Rauch*, 38 F.3d 842, 849 (6th Cir. 1994) (holding that absolute quasi-judicial immunity completely protected a defendant from a 42 U.S.C. § 1983 action). The Sixth Circuit instructs district courts to decide whether an actor is entitled to absolute quasi-judicial immunity by determining whether the "nature of the function performed" by the actor was *integral* to the judicial process.[4] *See Smith v. Leis*, 407 F. App'x. 918, 929 (6th Cir. 2011) ("[Q]uasi-judicial immunity extends to those persons performing tasks so *integral* . . . with the judicial process that these persons are considered an arm of the judicial officer who is immune.") (quoting *Bush*, 38 F.3d at 847) (emphasis added); *see also Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) ("Whether an action is [*integral*] depends on the nature and function of the act, not the act itself.") (quoting *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999)).

As a preliminary measure, in order for the Court to determine whether Huntsman qualifies for absolute quasi-judicial immunity, and is therefore not liable for an alleged violation of § 1983, the Court must first determine whether the nature of the function performed by

---

[4] This measure is recommended over the actor's classification or the constitutionality of her actions.

(1:10CV00754)

Huntsman was *integral* to the State court proceeding.

Smith argues that Huntsman was not an *integral* component to the custody proceedings. ECF No. 16 at 10. Defining "*integral*" as "essential to completeness," Smith contends that for a person to qualify as *integral* for the purposes of quasi-judicial immunity, the person must be so *integral* to the judicial process that the judge cannot decide the case without the person's input.[5] ECF No. 16 at 10. Smith concludes that Huntsman does not qualify for quasi-judicial immunity because Huntsman was not "essential to completeness" as the judge had the ability to make a custody determination without Huntsman's input. ECF No. 16 at 10.

Smith's dictionary definition of *integral* and the resulting conclusion that Huntsman is not entitled to quasi-judicial immunity are inconsistent with Sixth Circuit precedent. ECF No. 16 at 10. The Sixth Circuit interprets *integral* to include those actions deriving from the enforcement or execution of a court order. *See Reguli v. Guffee*, 371 F. App'x. 590, 602 (6th Cir. 2010) ("[Q]uasi-judicial immunity applied for defendant who carried out a court order because 'enforcing or executing a court order is [*integral*] with a judicial proceeding.'") (quoting *Bush*, 38 F.3d at 847); *see also J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x. 82, 89 (6th Cir. 2007) (holding that a person was "entitled to absolute quasi-judicial immunity when that official acts pursuant to a valid court order because the act of 'enforcing or executing a court order is [*integral*] with a judicial proceeding'") (quoting *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000)).

---

[5] Smith cites the Merriam-Webster Collegiate Dictionary as the source of the definition of "integral." ECF No. 16 at 10.

7

(1:10CV00754)

Smith concedes that Judge Celebrezze "personally selected Huntsman" to conduct the custody evaluation. ECF No. 1-2 at 5. In overruling Smith's motion to remove Huntsman, Judge Celebrezze *twice* ordered Huntsman to complete a custody evaluation. ECF No. 1-2 at 12. Coupled, these factors meet the Sixth Circuit's test for showing that Huntsman's function was an *integral* part of the judicial process because she was executing a court order to conduct a custody evaluation. ECF No. 1-2 at 12.

Pressing on, Smith argues that Huntsman is precluded from the protection of quasi-judicial immunity because Huntsman's actions were outside her duties as an arm of the court. ECF No. 16 at 11. Fairly recently, the Sixth Circuit held that some actions taken by those who may ordinarily be entitled to quasi-judicial immunity, for example persons conducting spontaneous in-home investigations or who threaten removal of a child from a parent's custody, are not necessarily absolutely protected from liability because those actions can be construed as "outside the ambit of actions intimately involved in the judicial process." *Reguli*, 371 F. App'x. at 599; *see also Kolley v. Adult Protective Services*, 10-CV-11916, 2011 WL 1298802 (E.D. Mich. Mar. 31, 2011) (holding that district courts must "examine the specific actions that the [quasi-judicial officer] was alleged to have taken" to determine whether they were taken while the quasi-judicial officer was acting for the Court). *Reguli* instructs the Court "to examine the character of the allegations against the quasi-judicial officer to determine their connection to the judicial process." *Savoie v. Martin*, 3:10-0327, 2010 WL 4982543 (M.D. Tenn. Dec. 2, 2010) (citing *Reguli*, 371 F. App'x. at 599).

8

(1:10CV00754)

Through the lens of the test set forth in *Reguli*,[6] it is clear that Huntsman's actions were sufficiently intertwined with the judicial process to afford Huntsman absolute quasi-judicial immunity.

Smith's contentions that Huntsman "freely" insulted Smith and demeaned the minor children occurred during court ordered interviews. ECF No. 1-2 at 6-11. In addition, Smith alleges that Huntsman appeared, without notice, to interview the minor children at Paul's home. ECF No. 1-2 at 13. That visit, however, can hardly be characterized as "unannounced" because the *Guardian ad Litem* accompanied Huntsman, and Neuhaus–Smith's independent custody evaluator–knew of the visit in advance. ECF No. 1-2 at 13. Also, as indicated above, the complaint acknowledges that Judge Celebrezze "personally selected Huntsman" to conduct the custody evaluation (ECF No. 1-2 at 5), and on two separate occasions ordered Huntsman to complete the custody evaluation inspite of Smith's explicit objections (ECF No. 1-2 at 12). The complaint, itself, posits that the allegations against Huntsman arise from Huntsman's execution of Judge Celebrezze's order and, as such, were "directly related to the court proceedings." *Reguli*, 371 F. App'x. at 599. Huntsman's actions do not fall "outside the ambit of actions intimately involved in the judicial process." *Id.*

Accordingly, the Court finds that the § 1983 allegation against Huntsman, in Count One,

---

[6] *Compare Holloway v. Brush*, 220 F.3d 767, 777 (6th Cir. 2000) (finding that "[t]he question is whether the [quasi-judicial officer] carried their burden of establishing that they were functioning [for the court] . . . when they performed the actions complained of," and concluding that [the quasi-judicial officer] was not entitled to absolute immunity for "out-of-court" actions taken while she was not actively functioning for the court) (citation omitted), *and Thomas v. St. Vincent & Sarah Fisher Ctr.*, No. 03–73002, 2006 WL 2418974, at *6 (E.D. Mich. Aug.21, 2006) (unpublished) (holding that a quasi-judicial officer was not immune for acts done outside of her judicial function of assisting "the court in deciding the best interests of [the child]").

9

(1:10CV00754)

is barred by absolute quasi-judicial immunity.  Huntsman's motion to dismiss (ECF No. 10) is granted.

> **B.  The 42 U.S.C. § 1983 Claims Against Miller Fail to State a Claim Upon Which Relief Can Be Granted**.  ECF No. 1-2 at 15-18.

Smith contends that Counts One and Two[7] allege facts sufficient to survive a motion to dismiss the § 1983 allegations.  ECF No. 1-2 at 15-18.  In summary, Smith alleges that Miller, Huntsman's supervisor, (1) while acting under the color of law, (2) deprived Smith of a right secured by federal law by failing to intervene when Huntsman deprived Smith of her First Amendment rights.  ECF No. 1-2 at 15-18.  Specifically, in Count One, Smith argues that Miller failed to dismiss Huntsman from Smith's case after Miller was informed of Huntsman's alleged "egregious" activities.  ECF No. 1-2 at 15-16.  In Count Two, Smith argues that Miller failed to supervise or exercise control over Huntsman even though Miller knew or should have known of Huntsman's negative viewpoint toward certain religious ideologies.[8]  ECF No. 1-2 at 16-18.

Miller contends the complaint fails to establish the second element required for a viable § 1983 action–deprivation of a right secured by federal law–because it does not contain sufficient factual information that Miller deprived Smith of any right secured by federal law.  ECF No. 21

---

[7] In both Counts One and Two, Smith argues that Miller failed to act, when she found out about Huntsman's activities (Count One; ECF No. 1-2 at 15-16), or, because of Miller's knowledge of Huntsman's propensities (Count Two; ECF No. 1-2 at 16-18).

[8] Miller argues that Count Two is a *respondeat superior* claim that must fail because *respondeat superior* cannot be used to recover in § 1983.  ECF No. 21 at 8.  While Miller is correct in her analysis of the law, her interpretation of Count Two is incorrect.  *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (holding that "1983 does not permit a plaintiff to sue . . . on the theory of *respondeat superior*") (citation omitted).  Smith does not claim *respondeat superior* until Count Three–a State law claim that does not name Miller as a defendant.  ECF No. 1-2 at 18.

10

(1:10CV00754)

at 7; 42 U.S.C. § 1983. In support of this assertion, Miller contends that Judge Celebrezze, not Miller, selected Huntsman; and Judge Celebrezze, not Miller, ordered Huntsman to complete the custody evaluation. ECF No. 21 at 7-8. Because it was Judge Celebrezze who selected and ordered Huntsman to complete the custody evaluation, Miller contends that she could not have violated Smith's rights secured by federal law. ECF No. 21 at 7-8.

The law supports Miller's position. For a supervisor to have § 1983 liability, Smith must prove that "[Miller] encouraged the specific incident of misconduct or in some other way directly participated in it." *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002)) *cert. denied*, 09-109, 2011 WL 1529807 (U.S. Apr. 25, 2011). Taking the facts in the light most favorable to Smith, Miller neither encouraged nor directly participated in Huntsman's custody evaluation. ECF No. 1-2 at 4-14.

Smith has not alleged that Miller encouraged Huntsman's alleged "verbal attacks." *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it'" ) (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)); *see also Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (holding that supervisor "liability must be based upon active unconstitutional behavior"). In addition, Smith cannot rely on Miller's mere awareness to establish liability in § 1983. *See Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (finding that liability in § 1983 cannot stem from only an "awareness of an employees' misconduct"); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (holding that a supervisor could not be liable for the acts of his subordinates simply because the

11

(1:10CV00754)

alleged harassments were brought to his attention). Overall, Smith has failed to plead facts indicating that Miller and Huntsman even communicated throughout the time Huntsman was completing the custody evaluation ordered by Judge Celebrezze. ECF No. 1-2 at 4-14. Smith has not, therefore, alleged a viable § 1983 claim against Miller.

Accordingly, the Court finds that the Complaint fails to provide sufficient facts showing that Miller's conduct deprived Smith of a right secured by federal law. This deficiency is fatal to a § 1983 claim. *See Fritz*, 592 F.3d at 722. Miller's motion to dismiss (ECF No. 21) is granted.

### C. The Court Declines to Exercise Supplemental Jurisdiction Over The Remaining State Claims.

Because the Court finds that the federal claims fail according to Rule 12(b)(6) and the case was originally removed from State court, there is a "strong presumption . . . in favor of remanding the [remaining state-law claims] to [Ohio] state court." *Durant v. Servicemaster Co.*, 109 F. App'x. 27, 30-31 (6th Cir. 2004) (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) *amended on denial of reh'g*, 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998)); *see also Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (holding that "the balance of considerations usually will point to . . . remanding [state claims] to state court if the action was removed") (citation omitted). Although this presumption can be overcome, without the existence of unusual or extreme circumstances "warranting the exercise of supplemental jurisdiction, the district court would abuse its discretion if it chose to exercise supplemental jurisdiction." *Durant*, 109 F. App'x. at 31. The Sixth Circuit has given district courts several factors to analyze when deciding if sufficient circumstances exist to warrant the exercise of supplemental jurisdiction "including the 'values of judicial economy, convenience,

12

(1:10CV00754)

fairness, and comity.'"  *Gamel*, 625 F.3d at 952 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  None of these factors, collectively or individually, warrant the exercise of supplemental jurisdiction in the instant case.

### 1. Judicial Economy Does Not Support Exercising Supplemental Jurisdiction.

The Sixth Circuit has held that "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial."  *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991).  When analyzing judicial economy, the Court looks at several factors, including but not limited to, whether the parties have completed discovery or the Court is so familiar with the facts of the case and has already invested significant time in the litigation.  *Gamel*, 625 F.3d at 952 (quoting *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195 (6th Cir. 2004)).

In the instant case, discovery has not been completed.  ECF No. 33.  In addition, while this case has been on the Court's docket for approximately one year, there have been seven motions to request more time on various issues and a rescheduled Case Management Conference.  ECF Nos. 1, 4, 5, 8, 13, 20, 24, 26, and 28.  While these motions are "ripe for decision," that status was achieved only at the beginning of May 2011.  *See Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1288 (6th Cir. 1992) (affirming the district court's decision to exercise supplemental jurisdiction over State law claims that "had been on the district court's docket for almost two years . . . [and] the parties had completed discovery"); *see also Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004) (affirming the district court's decision

(1:10CV00754)

to exercise supplemental jurisdiction over State law claims that had been on the docket for 11 months and "the parties had completed discovery").  As the adjudication of the State claims would require a significant amount of judicial resources, and the Court has not invested heavily to this point, judicial economy does bode in favor of exercising supplemental jurisdiction.

### 2. Comity Does Not Support Exercising Supplemental Jurisdiction.

The Supreme Court has held that "[n]eedless decisions of state-law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (holding that supplemental jurisdiction "should be exercised only in cases where the 'interests of judicial economy and the avoidance of multiplicity of litigation' outweigh our concern over 'needlessly deciding state-law issues.'") (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).

The remaining State claims require a significant amount of research and interpretation of State law, which weigh heavily against exercising supplemental jurisdiction over the remaining State law claims. *United Mine Workers of Am.*, 383 U.S. at 726.

### 3. Convenience Nor Fairness Support Exercising Supplemental Jurisdiction.

All the defendants are located within Cuyahoga County and all of the events happened within Cuyahoga County. ECF Nos. 1; 1-2.  The record before the Court does not suggest that it would be unfair to remand the unresolved claims to State court.[9] In fact, matters regarding

---

[9] *Cf*. *Gamel*, 625 F.3d at 952 (finding that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to [remanding] the State law claims .

14

(1:10CV00754)

domestic relations are of the sort deeply ingrained in State law and are best adjudicated in State court. *See* Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 2, 124 S. Ct. 2301, 2304 (2004) (holding that courts "generally declines to intervene in domestic relations, a traditional subject of state law); *see also* Ankenbrandt v. Richards, 504 U.S. 689, 714, 112 S. Ct. 2206, 2221 (1992) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.") (quoting *Ex parte Burrus*, 136 U.S. 586, 593-94, 10 S. Ct. 850, 853 (1890)). Therefore, remanding the State law claims is appropriate.

Accordingly, having found that judicial economy, convenience, fairness, and comity do not justify the exercise of supplemental jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining State law claims and orders that Counts Five to Nine (ECF No. 1-2 at 20-25) be remanded to the Cuyahoga County Court of Common Pleas Domestic Relations Division, the State court in which they emanated. *Durant*, 109 F. App'x. at 30-31.

## VI. Conclusion

For the aforementioned reasons, the Court grants Miller's (ECF No. 21) and Huntsman's (ECF No. 10) motions to dismiss as to Counts One and Two regarding the alleged violations of Title 42, United States Code Section 1983. Because the Court declines to exercise supplemental jurisdiction over the remaining State law claims, Counts Five through Nine (ECF No. 1-2 at 20-25), along with Neuhaus' motion to dismiss, are remanded to the Cuyahoga County, Ohio, Court of Common Pleas, Domestic Relations Division–the State court in which they originated.

---

. . if the action was removed") (quoting *Musson*, 89 F.3d at 1254-55).

(1:10CV00754)

       IT IS SO ORDERED.

| | |
|---|---|
| <u>July 7, 2011</u> |   <u>*/s/ Benita Y. Pearson*</u> |
| Date | Benita Y. Pearson |
| | United States District Judge |

(1:10CV00754)

## **APPENDIX A–Summary of Allegations**

| **Counts** | **Allegations** | **Defendants** |
|---|---|---|
| One<br>ECF No. 1-2 at 15-16 | **Civil Rights**<br>42 U.S.C. § 1983<br>*Huntsman*: (1) while acting under the color of law, Huntsman (2) deprived Smith of a right secured by federal law.<br>*Miller* erred in assigning the custody matter to Huntsman and in failing to intervene despite Huntsman's violative behavior. | Miller and Huntsman |
| Two<br>ECF No. 1-2 at 16-17 | **Civil Rights**<br>42 U.S.C. § 1983<br>Miller failed to remove Huntsman from the custody matter despite Huntsman's known violative propensities. | Miller |
| Three[10]<br>ECF No. 1-2 at 18 | **Respondeat Superior**<br>Huntsman and Miller, while acting (1) within the scope of their employment and (2) to promote Defendants' businesses, harmed Smith. | Cuyahoga County, Ohio, Cuyahoga County Common Pleas Court, Domestic Relations Division, and FCS |
| Four<br>ECF No. 1-2 at 18-20 | **Negligent Hiring**<br>Smith was harmed by Huntsman's violative propensities that should have been known at hiring. | Cuyahoga County, Ohio, Cuyahoga County Common Pleas Court, Domestic Relations Division, and FCS |

---

[10] Counts Three and Four named only Cuyahoga County, Ohio, Cuyahoga County Common Pleas Court, Domestic Relations Division, and FCS as defendants and alleged respondeat superior. ECF No. 1-2 at 18-20. As indicated in the Memorandum of Opinion and Order, Smith dismissed those claims voluntarily pursuant to FRCP 41(a)(1). ECF No. 18.

(1:10CV00754)

| | | |
|---|---|---|
| Five[11]<br>ECF No. 1-2 at 20-21 | **Intentional Infliction of Emotional Distress**<br>Huntsman's (1) intentional outrageous conduct (2) inflicted severe emotional distress on Smith, (3) a reasonable person. | Huntsman |
| Six<br>ECF No. 1-2 at 21-22 | **Negligent Infliction of Emotional Distress**<br>Huntsman's (1) negligent outrageous conduct (2) inflicted severe emotional distress on Smith, (3) a reasonable person. | Huntsman |
| Seven<br>ECF No. 1-2 at 22-23 | **Defamation**<br>Huntsman, (1) while in the presence of third parties, (2) recklessly or intentionally (3) made false and defamatory statements about Smith. | Huntsman |
| Eight<br>ECF No. 1-2 at 23-24 | **Negligence**<br>Neuhaus breached his duty of care to Smith by consulting with Huntsman. | Neuhaus |
| Nine<br>ECF No. 1-2 at 24-25 | **Fraud**<br>Neuhaus (1) failed to disclose his relationship with Huntsman, a material element to the transaction, which (2) induced Smith to hire Neuhaus. | Neuhaus |

---

[11] The Court declined to exercise supplemental jurisdiction over State law claims, Counts Five to Nine (ECF No. 1-2 at 20-25), and remanded them to the State court from which they emanated.